UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

LINDA SCHAIBLE,

    Plaintiff,

Case No. 16-12723

v.

HON. _____
United States District Court Judge

MEMBERSELECT INSURANCE
COMPANY and MARITZ
HOLDINGS, INC. EMPLOYEE
HEALTH CARE PLAN,

HON. _____
Magistrate Judge

    Defendants.
_____

## **COMPLAINT**

Now comes Plaintiff Linda Schaible, by and through counsel, and for her Complaint against Defendants, alleges as follows:

## Nature of Action

1. This is an action to:

    a. Enforce the terms of a welfare benefit plan administered pursuant to the Employee Retirement Income Security Act of 1974 (ERISA), as authorized under 29 U.S.C. § 1132(a)(3);

    b. Enjoin acts and practices which violate the terms of the ERISA plan, as authorized under 29 U.S.C. § 1132(a)(3); and

    c. To the extent that Plaintiff's funds are subject to an equitable lien imposed by an ERISA benefit plan, require reimbursement by a Michigan no-fault automobile insurance company.

## Jurisdiction and Venue

2. This Court has exclusive jurisdiction over the ERISA claims pursuant to 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1331.

3. This Court has supplemental jurisdiction over related state law claims pursuant to 28 U.S.C. § 1367(a).

4. Venue is proper in this Court pursuant to 29 U.S.C. § 1132(e)(2) and 28 U.S.C. § 1391(b).

## Parties

5. Plaintiff Linda Schaible (hereinafter "Ms. Schaible") is a resident of Oakland County, Michigan.

6. Defendant MemberSelect Insurance Company (hereinafter "MemberSelect") is a Michigan insurance company with its principal office located in Wayne County, Michigan.

7. Defendant Maritz Holdings Inc. Employee Health Care Plan (hereinafter "Maritz Plan") is a welfare benefit plan administered "solely in the interest of the participants and beneficiaries" of the plan pursuant to ERISA, 29 U.S.C. § 1104(a)(1), and the Maritz Plan is an entity that may sue or be sued under ERISA, 29 U.S.C. § 1132(d)(1).  The administrative office of the Maritz Plan is located in Fenton, Missouri.

## General Allegations

8. At all material times, Ms. Schaible has been a participant in the Maritz Plan.

9. At all material times, Ms. Schaible also has been insured under a contract of Michigan no-fault automobile insurance with MemberSelect, including coverage for personal injury protection (PIP) benefits.

10. On July 21, 2015, Ms. Schaible suffered serious injuries when she was walking within a crosswalk across Highland Road in accordance with a walk signal when she was struck by a Jeep Commander driven by Carmelo Ortiz.

11. The second vehicle turning left at the intersection, Mr. Ortiz actually drove around the first vehicle, which had stopped to yield the right of way to Ms. Schaible, and Mr. Ortiz' Jeep Commander then crashed into Ms. Schaible so violently that she was pulled out of her shoes and thrown in the air.

12. As a result of the crash, Ms. Schaible suffered serious injuries including but not limited to a traumatic brain injury and torn right knee ligaments.

13. As a result of the injuries she suffered in the July 21, 2015 crash, Ms. Schaible has required extensive medical treatment, and she has incurred numerous medical expenses.

14. Payment of many of Ms. Schaible's expenses has been advanced by the Maritz Plan.

15. Due to the nature and extent of the injuries suffered in the July 21, 2015 crash, Ms. Schaible has suffered a serious impairment of body function within the meaning of M.C.L. § 500.3135, thereby entitling Ms. Schaible to recover noneconomic damages from Mr. Ortiz.

16. However, the Maritz Plan's contractors, Cigna Health and Life Insurance Company and Xerox Recovery Services, have claimed that the Maritz Plan is entitled to an equitable lien for reimbursement of the medical expenses it advanced from Ms. Schaible's potential third-party recovery.

17. Cigna and Xerox claim that the Maritz Plan is a self-funded welfare benefit plan administered under ERISA.

18. However, the Maritz Plan has filed a Form 5500 with the Internal Revenue Service for the 2014 calendar year declaring that the Maritz Plan is funded through a combination of insurance and indemnity contract by Cigna.

19. Nevertheless, Cigna has provided a portion of a "Booklet" purportedly describing the benefits available under the "Maritz Holdings Inc. Open Access Plus Medical Benefits Health Reimbursement Arrangement Standard Plan" effective January 1, 2014, which declares:

THIS IS NOT AN INSURED BENEFIT PLAN.  THE BENEFITS DESCRIBED IN THIS BOOKLET OR ANY RIDER ATTACHED HERETO ARE SELF-INSURED BY MARITZ HOLDINGS, INC. WHICH IS RESPONSIBLE FOR THEIR PAYMENT.  CIGNA HEALTH AND LIFE INSURANCE COMPANY (CIGNA) PROVIDES CLAIM ADMINISTRATION SERVICES TO THE PLAN, BUT CIGNA DOES NOT INSURE THE BENEFITS DESCRIBED.

20. Apparently based on the presumption that the Maritz Plan is not insured, Xerox has demanded reimbursement from Ms. Schaible of expenses "paid by our client," which is identified as Cigna, not the Maritz Plan.

21. As of June 1, 2016, Xerox is claiming a right of reimbursement in the amount of $22,133.89 paid by Cigna to satisfy $55,840.81 of provider claims for Ms. Schaible's accident-related medical treatment.

22. This claim is apparently based on a complete exclusion of coverage contained in the Cigna booklet, which states:

**Expenses For Which A Third Party May Be Responsible**

This plan does not cover:

- Expenses incurred by you or your Dependent (hereinafter individually and collectively referred to as a "Participant,") *for which another party may be responsible* as a result of having caused or contributed to an Injury or Sickness.

- Expenses incurred by a Participant to the extent any payment is received *for them* either directly or indirectly from a third party tortfeasor or as a result of a settlement, judgment or arbitration award in connection with any automobile no-fault, uninsured or underinsured motorist, homeowners, workers' compensation, government insurance (other than Medicaid), or similar type of insurance or coverage.

23. Importantly, this provision of the Cigna booklet applies only to the extent that the participant incurs expenses "*for which another party may be responsible*" or "*to the extent any payment is received for them*."

24. To enforce these exclusions, the Cigna booklet contains the following provisions, which reiterate that reimbursement is limited to expenses "*for which ... another party may be responsible or for which the Participant may receive payment*":

**Subrogation/Right of Reimbursement**

If a Participant incurs a Covered Expense *for which*, in the opinion of the plan or its claim administrator, *another party may be responsible or for which the Participant may receive payment* as described above:

- Subrogation: The plan shall, to the extent permitted by law, be subrogated to all rights, claims or interests that a Participant may have against such party and shall automatically have a lien upon the proceeds of any recovery by a Participant from such party to the extent of any benefits paid under the plan. A Participant or his/her representative shall execute such documents as may be required to secure the plan's subrogation rights.

- Right of Reimbursement: The plan is also granted a right of reimbursement from the proceeds of any recovery whether by settlement, judgment, or otherwise. This right of reimbursement is cumulative with and not exclusive of the subrogation right granted in paragraph 1, but only to the extent of the benefits provided by the plan.

25. A Michigan statute has abolished tort liability for certain damages, including all damages for medical expenses, that may be incurred as a result of a motor vehicle collision in Michigan. M.C.L. § 500.3135(3).

26. Therefore, as a matter of law, the third-party tortfeasor who caused the crash that injured Ms. Schaible cannot be held responsible for the medical expenses which Ms. Schaible incurred as a result of her injuries, and such a noneconomic tort recovery is outside the scope of the Cigna booklet's reimbursement provision.

27. Nevertheless, Xerox has insisted that Cigna is entitled to reimbursement from Ms. Schaible's potential third-party recovery.

28. Additionally, the Cigna booklet exclusion appears to categorically exclude coverage of all expenses "to the extent any payment is received for them … in connection with any automobile no-fault … insurance."

29. This provision of the Cigna booklet expressly disavows coverage of any expenses that may be covered by no-fault automobile insurance such as the MemberSelect insurance contract.

30. Assuming the Maritz Plan is self-funded and not insured, this express disavowal of expenses covered by the MemberSelect insurance contract would have the effect of rendering MemberSelect's PIP coverage primary in the order of priority under prevailing ERISA jurisprudence.

31. Nevertheless, MemberSelect has insisted that its PIP coverage is secondary in order of priority to the Maritz Plan.

32. The MemberSelect insurance contract includes PIP coverage for all of Ms. Schaible's allowable expenses consisting of all reasonable charges incurred for reasonably necessary products, services and accommodations for her care, recovery, or rehabilitation arising from the July 21, 2015 crash.

33. The MemberSelect insurance contract declarations indicate that its PIP coverage for Ms. Schaible is "coordinated" with a $300 deductible.

34. Under the terms of the MemberSelect insurance contract, this means that:
    a. Benefits are excluded to the extent that they are "paid or payable" under primary medical insurance or health care benefit plans providing coverage for motor vehicle accident injuries; and
    b. If other primary protection is not available at the time of loss, amounts payable will be reduced by the $300 deductible.

35. This $300 deductible ensures that MemberSelect receives a benefit for its reduced premium even if there is no other primary coverage.

36. Thus, to the extent that the Maritz Plan has a right of reimbursement from Ms. Schaible's potential third-party recovery, the expenses advanced by the Maritz Plan are not ultimately "paid or payable" within the meaning of the MemberSelect insurance contract, and they are not subject to coordination as a result.

37. Rather, in this situation, MemberSelect remains responsible for paying Ms. Schaible's allowable expenses, including reimbursement of any advances made by the Maritz Plan, subject to a $300 deductible.

38. Nevertheless, MemberSelect has refused to accept responsibility for its primary status, and it has refused to reimburse the Maritz Plan.

39. Unless corrected, this conflict would leave Ms. Schaible without the protection of either her MemberSelect PIP coverage or her health benefits under the Maritz Plan, and this conflict has had a chilling effect on her entitlement to pursue noneconomic damages from Mr. Ortiz.

40. Consequently, Ms. Schaible seeks this declaratory and injunctive relief to protect her interests.

### Count I: Enforcement of ERISA Plan Terms Pursuant to 29 U.S.C. § 1132(a)(3)

41. Plaintiff restates all of the preceding allegations as incorporated herein.

42. ERISA authorizes plan participants such as Ms. Schaible to seek appropriate equitable relief to enforce the terms of a benefit plan pursuant to 29 U.S.C. § 1132(a)(3).

43. The Cigna booklet contains an exclusion that expressly disavows coverage of any expenses that may be covered by no-fault automobile insurance such as the MemberSelect insurance contract.

44. Assuming this provision of the Cigna booklet accurately states the terms of the Maritz Plan, the preemptive power of ERISA effectively nullifies conflicting state law provisions, and this express disavowal of benefits covered by no-fault insurance effectively renders MemberSelect's PIP coverage primary in the order of priority.

45. Therefore, it would be appropriate for the Court to enforce the terms of the Maritz Plan in accordance with 29 U.S.C. § 1132(a)(3), determining that MemberSelect's PIP coverage is primary in the order of priority under the circumstances of this case.

46. It would also be appropriate for the Court to award Plaintiff the reasonable attorney fees and costs incurred in this action pursuant to 29 U.S.C. § 1132(g)(1).

Wherefore, Plaintiff requests this Honorable Court to enforce the terms of the Maritz Plan in accordance with 29 U.S.C. § 1132(a)(3), determining that MemberSelect's PIP coverage is primary in the order of priority under the circumstances of this case, compelling MemberSelect to reimburse the Maritz Plan for all applicable advanced expenses, and to award Plaintiff the reasonable attorney fees and costs incurred in this action pursuant to 29 U.S.C. § 1132(g)(1).

## Count II: Enjoining Acts and Practices Violating ERISA Plan Terms Pursuant to 29 U.S.C. § 1132(a)(3)

47. Plaintiff restates all of the preceding allegations as incorporated herein.

48. ERISA authorizes plan beneficiaries such as Ms. Schaible to enjoin any act or practice which violates any provision of ERISA or the terms of an ERISA plan. 29 U.S.C. § 1132(a)(3).

49. The right of subrogation and reimbursement asserted in the Cigna booklet expressly applies only to the extent that the participant incurs expenses "*for which another party may be responsible*" or "*to the extent any payment is received for them.*"

50. A Michigan statute has abolished tort liability for certain damages, including all damages for medical expenses, that may be incurred as a result of a motor vehicle collision in Michigan. M.C.L. § 500.3135(3).

51. Thus, as a matter of law, the third-party tortfeasor who caused the crash that injured Ms. Schaible cannot be held responsible for the medical expenses which Ms. Schaible incurred as a result of her injuries.

52. Asserting a right of reimbursement against such a noneconomic tort recovery would violate the express terms of the Maritz Plan as described in the Cigna booklet.

53. Nevertheless, Xerox has insisted that Cigna is entitled to reimbursement from Ms. Schaible's potential third-party recovery in violation of the Maritz Plan terms.

54. Therefore, it would be appropriate for the Court to enjoin the Maritz Plan and its contractors from asserting any right of reimbursement against Ms. Schaible's potential noneconomic tort recovery.

55. It would also be appropriate for the Court to award Plaintiff the reasonable attorney fees and costs incurred in this action pursuant to 29 U.S.C. § 1132(g)(1).

Wherefore, Plaintiff requests this Honorable Court to enjoin the Maritz Plan and its contractors from asserting any right of reimbursement against Ms. Schaible's potential noneconomic tort recovery pursuant to 29 U.S.C. § 1132(a)(3), and to award Plaintiff the reasonable attorney fees and costs incurred in this action pursuant to 29 U.S.C. § 1132(g)(1).

### **Count III: Reimbursement of Tort Lien by MemberSelect**

56. Plaintiff restates all of the preceding allegations as incorporated herein.

57. Under the terms of the MemberSelect insurance contract, its coordination provision is limited in that:

    a. Benefits are excluded to the extent that they are "paid or payable" under primary medical insurance or health care benefit plans providing coverage for motor vehicle accident injuries; and

    b. If other primary protection is not available at the time of loss, amounts payable will be reduced by the $300 deductible.

58. To the extent that it has a right of reimbursement from Ms. Schaible's potential third-party recovery, the expenses advanced by the Maritz Plan are not "paid or payable" within the meaning of the MemberSelect insurance contract, and they are not subject to coordination as a result.

59. Consequently, there is no other primary insurance covering Ms. Schaible, and Ms. Schaible's accident-related expenses are payable by MemberSelect, subject to a $300 deductible.

60. Therefore, it would be appropriate for the Court to determine that Ms. Schaible is entitled to reimbursement from MemberSelect of any expenses she must reimburse to the Maritz Plan from her tort recovery, subject to a $300 deductible.

Wherefore, Plaintiff requests this Honorable Court to determine that she is entitled to reimbursement from MemberSelect of any expenses she must reimburse to the Maritz Plan from her tort recovery, and to award her any applicable costs, interest, and attorney fees.

                                        Respectfully submitted,

                                        s/Robert B. June
                                        Robert B. June
                                        Law Offices of Robert June, P.C.
                                        Attorney for Plaintiff
                                        415 Detroit Street, 2nd Floor
                                        Ann Arbor, MI 48104-1117
                                        Phone: (734) 481-1000
                                        Primary E-Mail: bobjune@junelaw.com
                                        Attorney Bar Number: P51149

Dated: July 21, 2016